UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Brian K. Hall, et al.,                                    Case No. 3:17-cv-821

                    Plaintiffs

        v.                                                MEMORANDUM OPINION
                                                                 AND ORDER

Edgewood Partners Insurance Center, Inc.,

                    Defendant

### Brief Background

This matter comes before me on the Defendant's motion for preliminary injunction (Doc.

No. 11), Plaintiffs' opposition (Doc. No 15), including the parties' supplemental briefing (Doc. No.

19) and additional supplements (Doc. No. 20). On May 24, 2017, I conducted a hearing in this

matter. Also before me are the parties' post-hearing briefs (Doc. Nos. 53 and 54). This Court has

jurisdiction pursuant to 28 U.S.C. § 1332.


The background of this case was set forth in my previous memorandum and order (Doc.

No. 26) granting the Defendant's motion for TRO. The Defendant seeks the same enforcement of

the post-employment restrictive covenants and asks this Court to prohibit the Plaintiffs from

soliciting, directing, or accepting business from EPIC's restricted clients.


### Discussion


The purpose of a preliminary injunction is to preserve the status quo between the parties

pending a final determination on the merits. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke

Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).

The same four factors considered in a motion for temporary restraining order are the same factors

considered on a preliminary injunction motion, namely: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction. *Winter v. NRDC*, 555 U.S. 7, 20 (2008). These factors are "to be balanced, not prerequisites that must be met." *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003) (citation omitted).

Moreover, as noted by the appellate court in the *Certified Restoration* case:

> Given this limited purpose, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Id.* Accordingly, a party "is not required to prove his case in full at a preliminary injunction hearing and the findings of fact and conclusions of law made by a court granting the preliminary injunction are not binding at trial on the merits." *Id. But see Leary*, 228 F.3d at 739 (noting that the "proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion").

511 F.3d at 542.

Based upon the record before me, which includes all of the pre-hearing and post-hearing briefing, the transcript of proceedings, and the exhibits admitted at the May 24th hearing, the Defendant's motion for a preliminary injunction is granted.

**Likelihood of Success on the Merits**

Defendant EPIC established it has a strong likelihood of success on the merits. In 2012, USI purchased Hylant Specialty Programs and the signatories to that Asset Purchase Agreement included USI, Hylant Specialty Programs, and Brian Hall. The acquired assets included clients, active prospective clients, client renewal lists, as well as goodwill. The Asset Purchase Agreement also was conditioned on certain deliverable items including executed employment agreements of Brian Hall, and other employees including Michael Thompson. In return for the purchase and sale of the acquired assets and the restrictive covenants, USI paid Hylant Specialty Programs and Hall a

substantial amount of money. Brian Hall remained employed with USI as an executive and Michael Thompson remained employed by USI as a producer.

In November 2016, USI entered into an asset purchase agreement with Defendant EPIC for the equipment rental and retail rental client accounts of USI. The assets purchased by EPIC included client accounts in existence, all relationships with active prospective clients and including all goodwill and proprietary information. During the transition phase of this sale, the subject of a transition services agreement, EPIC offered both Hall and Thompson, albeit at different times, employment with the Defendant, but the terms were not acceptable to the individual Plaintiffs. As neither Plaintiff accepted EPIC's proposed terms of employment, USI terminated their employment. In conjunction with this asset purchase agreement, USI and EPIC entered into an Assignment and Assumption of Employment Agreements, which assigned Hall and Thompson's employee agreements and included the aforementioned restrictive covenants.

The restrictive covenants prohibiting solicitation of client accounts are two years in duration and six months for active prospective client accounts. These restrictions are triggered as of the date the Plaintiffs are no longer employed no matter the reason for cessation of their employment.

Both sides agree New York law governs these restrictive covenants. I find the restrictive covenants held by USI were assignable to EPIC at the time of the USI-EPIC asset purchase agreement. That asset purchase agreement included the purchase of all client accounts and goodwill. I further find the restrictive covenants, held by EPIC, to be enforceable and reasonable as to the two year time period, as stated therein. The record before me also demonstrates that Hall and Thompson solicited EPIC customers in violation of those restrictive covenants.

**Irreparable Injury**

EPIC has demonstrated irreparable injury because the loss of customer goodwill as a violation of an enforceable restrictive covenant is recognized under New York law. Both the Sixth and Second Circuits have affirmed similar findings. *See Southern Glazer's Distributors of Ohio, LLC v. The Great Lakes Brewing Co.*, No. 16-4235, __F.3d__, 2017 WL 2729083 *6 (6th Cir. June 26, 2017) (citing *Basicomputer Corp. v. Scott*, 973 F.2d at 511-12); *Ticor Title Ins. v. Cohen*, 173 F.3d 63, 69-70 (2nd Cir. 1999). The irreparable harm is more than a presumption given the actions of the Plaintiffs in actively soliciting EPIC's clients for Broker of Record letters. The Plaintiffs did not agree to refrain from soliciting former clients until this Court granted a temporary restraining order prohibiting such solicitation.

**Substantial Harm to Others and the Public Interest**

Regarding substantial harm to others, Plaintiffs argue their livelihood will be injured by the issuance of a preliminary injunction. They also contend injunctive relief will harm their former clients who want to keep their business with the Plaintiffs. The Defendant faces a challenge to its goodwill, goodwill that was bargained for and for which it purchased for significant consideration.

As far as the public interest, restrictions on trade are generally disfavored. When those restrictions are considered in conjunction with the sale of a business which includes the transfer of goodwill, the purchaser's interest in protecting that goodwill is a legitimate reason to enforce reasonable restrictions. The public interest is also advanced when agreements are enforced according to the applicable law.

### CONCLUSION

In considering and weighing the relevant factors, I find the Defendant has demonstrated both a likelihood of success on the merits and irreparable harm. I also find the factors of substantial

harm to others and the public interest carry less weight in this analysis.   Nevertheless, in balancing all of the factors, they favor granting injunctive relief.  Accordingly, the Defendant's motion for preliminary injunction (Doc. No.  11) is granted.  The bond filed in conjunction with the TRO remains in place as security for this preliminary injunction order.

Plaintiff's motion for leave to submit evidence to contradict the declaration of Eileen Webb (Doc. No. 55) is denied as moot.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge
