UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Brian K. Hall, et al.,                                        Case No. 3:17-cv-821

                 Plaintiffs

        v.                                               MEMORANDUM OPINION

Edgewood Partners Insurance Center, Inc.,

                 Defendant

## I. BACKGROUND

This matter is before me on four issues. The first issue addresses the Sixth Circuit's mandate regarding evidentiary support for customers recruited and developed solely by Michael Thompson. The second issue involves the Plaintiffs' motion for partial summary judgment. The third issue considers the Defendants' motion for contempt. The fourth issue is Plaintiffs' oral request to increase the bond attendant to the injunctive relief. The second and third issues have been briefed by the parties.

On March 19, 2018, I held an evidentiary hearing on the first item as well as entertaining oral argument on the parties' respective positions. Additionally, I heard brief oral arguments on the remaining issues. As all the parties are well acquainted with this litigation, I dispense with an overview of the background and turn to the issues at hand.

## II. THOMPSON'S OLD CLIENTS

The Sixth Circuit's charge regarding Thompson's previous clients was made clear in its December 19, 2017 opinion:

> Thompson has identified certain clients with which he formed relationships without any financial contribution from Hylant or USI. Edgewood has no legitimate interest in barring Thompson from soliciting clients "who came to [Hylant and USI] solely to avail themselves of [Thompson's] services and only as a result of his own independent recruitment efforts." [*BDO Seidman v. Hirshberg*, 712 N.E.2d 1220, 1225 (N.Y. 1999)]. As to these clients, therefore, Edgewood cannot enforce Thompson's non-solicitation agreement.
>
> The district court failed to distinguish between those clients Thompson recruited with the benefit of Hylant's and USI's resources and those he recruited solely on his own accord. Edgewood has no likelihood of success on the merits as to the latter camp. We therefore reverse the district court's ruling with respect to those clients. . . . On remand, the district court should make factual findings as to which of Thompson's clients he recruited and developed solely on his own accord, and which clients Hylant and USI expended their own resources in recruiting and developing. It should modify the preliminary injunction to exclude clients that Thompson recruited and developed solely on his own.

*Hall v. Edgewood Partners Insurance Center, Inc.*, 878 F.3d 524, 529-30 (6th Cir. 2017).

Michael Thompson testified he cultivated twenty customers on his own prior to commencing work for Hylant Specialty Programs at the end of 1996. (Plaintiff's Ex. 1[1]). Thompson was responsible for all of his expenses as an employee of Hylant Specialty Programs. In addition, he testified that he developed his own leads for clients. The customer list identified at the hearing showed a total of forty-one clients developed by Thompson, seventeen of them recruited during his time at Hylant Specialty Programs and four during his time at USI, in addition to the twenty he recruited prior to working at Hylant.

While working for USI, Thompson's commissions were lower but USI also picked up some of the expenses which included travel and entertainment reimbursements. As to the four identified clients cultivated during his tenure at USI and which Thompson recruited with the benefit of USI's resources, I find those clients are subject to the preliminary injunction order. (Doc. No. 59).

The evidence presented indicates that thirty-seven of Thompson's clients were recruited and developed solely of his own accord. Per the directive of the Sixth Circuit, my previous order is

---

[1] This exhibit was presented and admitted, without objection, at the March 15, 2018 hearing.

2

modified to reflect that these thirty-seven customers are not subject to the preliminary injunction (Doc. No. 59), therefore, the order is modified to exclude those customers.

### III. PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

Brian Hall seeks summary judgment on the Defendant's counterclaim alleging breach of contract. To succeed on a breach of contract claim, the movant must demonstrate: (1) existence of a contract; (2) performance by the party seeking recovery; (3) breach by the other party; and (4) damages flowing from the breach. *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 759 F.Supp.2d 363, 376 (S.D.N.Y. 2010).

Edgewood seeks to enforce the restrictive covenants of Hall's Employment Agreement and the post-employment obligations contained therein. Hall contends the assignment of that Agreement is invalid. Hall's employment with USI was terminated on March 16, 2017. USI and Edgewood executed an Assignment and Assumption of Employment Agreements on March 24, 2017. Hall argues that because Edgewood decided not to employ Hall, the assignment of the Employment Agreement is invalid. I disagree.

New York allows for the assignment of an agreement containing a non-competition provision. *See Eisner Computer Solutions, LLC v. Gluickstern*, 741 N.Y.S.2d 511 (1st Dept. 2002); *Special Products Mfg., Inc. v. Douglass*, 553 N.Y.S.2d 506 (3rd Dept. 1990); *Abalene Pest Control Service v. Powell*, 187 N.Y.S.2d 381 (2d Dept. 1959). To determine whether a valid assignment exists, I turn to the provision of Hall's Employment Agreement which specifically addresses "assignment":

> [Hall] may not assign any rights (other than the right to receive income hereunder) under this Agreement without the prior written consent of [USI]. [Hall's] obligations under this Agreement inure to [USI], its successors and assigns. [USI] may, at any time and without [Hall's] further approval or consent, assign or transfer this Agreement, by merger, asset sale or otherwise, to any subsidiary, affiliate, purchaser, acquirer or other assignee or successor with which [Hall] *may* become employed. Any such successor or assign is expressly authorized to enforce the terms of this Agreement.

(Doc. No. 5-4 at ¶ 16). (Emphasis added).

Reading the entire provision and using ordinary principals of contract construction, I find the language Hall relies upon is unambiguous and permissive. In other words, assignment of this provision is not dependent on Hall's employment with USI's successor. Accordingly, Hall's motion for partial summary judgment is denied as to Edgewood's counterclaim.

### IV. Defendant's Motion for Contempt

A party seeking an order of civil contempt must prove by clear and convincing evidence that the respondent violated the court's prior order. *Glover v. Johnson,* 138 F.3d 229, 244 (6th Cir. 1998). A primary purpose of civil contempt sanctions is to enforce compliance with a court order. *See Downey v. Clauder,* 30 F.3d 681, 685 (6th Cir. 1994).

The court must determine whether the offender "violated a definite and specific order of the court requiring [them] to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (citation omitted). The factors the movant must establish include: "(1) the order clearly and unambiguously

imposed an obligation on the party; (2) proof of the party's noncompliance with the order was clear and convincing; and (3) the party did not diligently attempt to comply with the order." *McAlpin v. Lexington 76 Auto Truck Stop, Inc.*, 229 F.3d 491, 505 (6th Cir. 2000) (citation omitted).

On April 7, 2017, Plaintiff Hall formed a Michigan LLC named BKH LLC d/b/a National Insurance Specialists, to continue his work as an insurance broker in the equipment rental industry. Edgewood sought and secured a temporary restraining order on May 19, 2017. (Doc. No. 25).

Defendant asks the Court to hold Plaintiffs in civil contempt as they claim Plaintiffs directly and indirectly solicited Arrow Tool Rental, a restricted client, in violation of the preliminary injunction order of July 5, 2017. (Doc. No. 59). Arrow Tool Rental was identified as a restricted client in a list sent to Plaintiffs by Defendants, on July 11, 2017. (Doc. Nos. 64-1 and 64-2).

On October 18, 2017, a client service representative of BKH emailed the president of Arrow Tool Rental seeking to quote coverage for their business. Arrow Tool Rental's president conveyed his interest in "get[ting] started right away." (Doc. No. 63 at p. 5). The representative replied that (Plaintiff) Mike Thompson would be calling him shortly.

Plaintiffs point to Thompson's Employment Agreement and the restrictive covenants which distinguish between "Client Accounts" and "Active Prospective Clients." Thompson contends Arrow Tool Rental was designated as an "Active Prospective Client" and per the terms of his agreement, he was prohibited from contacting Arrow until six months following his termination from USI. Thompson was terminated on April 14, 2017. Six months later, Thompson contacted Arrow on October 18, 2017, in accordance of the restrictive covenant.

Defendant rejects Plaintiffs' arguments based on the language of the non-solicitation obligations addressing duration, specifically that the:

> Executive agrees that (i) the duration of the non-solicitation obligations hereunder
> shall be extended by the period of time in which the Producer is in breach of those

5

obligations and (ii) the extended duration shall be measured from the date of the
court order granting injunctive relief.

(Doc. No. 1-2, ¶ 6.1(b)

As the TRO was entered on May 19, 2017, Plaintiffs were prohibited from soliciting "Active Prospective Clients" until November 19, 2017.

Plaintiffs dispute they intentionally disregarded the Court's order. They contend the tolling language in the agreement does not apply to pre-existing clients, but applies solely to Prospects. As Plaintiffs did not breach the non-solicitation provision in the agreement concerning Active Prospective Clients, they did not believe the tolling language in the agreement applied to Active Prospective Clients. Plaintiffs also waited more than six months to fall within the duration of the non-solicitation clause regarding Active Prospective Clients before contacting Arrow Tool Rental. If Plaintiffs erred, they contend it was not intentional and request the motion be denied.

In a civil contempt proceeding, unlike a criminal proceeding, intent is irrelevant and "willfulness is not an element of civil contempt." *Rolex*, 74 F.3d at 720. Once the movant makes a prima facie showing of the violation, it becomes the respondent's burden to prove an inability to comply as follows:

> [T]he test is not whether defendants made a good faith effort at compliance but whether "the defendants took all reasonable steps within their power to comply with the court's order."

*Glover*, 138 F.3d at 243 (citing *Glover v. Johnson,* 934 F.2d 703, 708 (6th Cir. 1991)). Good faith is not a defense in a civil contempt action. The respondent can assert an inability to comply, but must demonstrate "categorically and in detail" why they did not comply with the court's order. *Id.*

Here, once the July 2017 preliminary injunction order issued, Plaintiffs understood certain customers were off limits, although there was some confusion on that issue. When they received the

July 11, 2017 letter identifying Arrow Tool Rental as a restricted client, Plaintiffs were clearly on notice of the restricted clients. There is no indication Plaintiffs attempted to dispute this list nor did they seek clarification from the court as to this particular client. Based on the circumstances before me, I find the Defendant has established by clear and convincing evidence that Plaintiffs violated the July 2017 preliminary injunction order.

In addition to an order of contempt, Defendants seek leave to engage in expedited discovery at Plaintiffs' expense to discover the extent of improper conduct as well as seeking attorneys' fees and costs. Where the court finds that sanctions are appropriate, they may be imposed "solely to coerce future compliance with the court's order or to compensate for injuries resulting from noncompliance." *N.L.R.B. v. Howard Baer, Inc.,* 99 F.3d 1139, 1996 WL 490347, *17 (6th Cir. 1996). The court's focus is prospective in nature and must, therefore, "exercise the least possible power adequate to the proposed end." *Id.* citing *Shillitani v. United States,* 384 U.S. 364, 379 (1966).

I will schedule a status conference to discuss that issue and set deadlines to that effect. The issue of attorneys' fees is also deferred until the status conference.

**V. REQUEST TO INCREASE TRO BOND**

At the conclusion of the March 19th hearing, Plaintiffs moved to increase the current bond from $50,000 to $250,000. The justification for the increase was based on the time which has elapsed, "the potential damages that Mr. Hall and Mr. Thompson could sustain have increased and, therefore, we think a $250,000 bond is more accurate indication of what occur." (Transcript at p. 80).

The amount of a bond issued in conjunction with a preliminary injunction is in the discretion of the trial court. *Appalachian Regional Healthcare v. Coventry Health and Life Ins. Co.*, 714 F.3d 424, 431 (6th Cir. 2013). The purpose of a bond is tripartite:

> It gives the party seeking the injunction a sense of its liability if the injunction is later found to have been unlawful. It provides the court with a basis to set the proper amount (though not necessarily a definitive one). And it furnishes an appellate court with a marker against which to review the district court's determination (though, again, not necessarily an exclusive one).

*Id.* at 432. While Plaintiffs opined at possible increased damages, they provided no specific estimate of damages to justify their request for the increase. At this time, I will deny the motion to increase the bond without prejudice.

### VI. CONCLUSION

For the reasons stated above, and in accordance with the mandate of the Sixth Circuit, I find the preliminary injunction order of July 5, 2017 (Doc. No. 59) is modified to exclude the first thirty-seven customers identified in Plaintiff's Exhibit 1. This includes those customers which Plaintiff Thompson recruited prior to his tenure with USI. Accordingly, the customers which are off limits to Plaintiffs and subject to the July 2017 preliminary injunction order include: Equipment Rentals, Quick Lifts, Indestructo Rental, and five Star Equipment Rental.

I also find the Plaintiffs' motion for partial summary judgment (Doc. No. 72) is denied. The Plaintiffs' oral motion to increase the bond is denied without prejudice. Lastly, the Defendant's motion for contempt (Doc. No. 62) is granted and a telephonic status conference to discuss issues related to this motion is scheduled for May 10, 2018 at 11:00 a.m. The Court will initiate that conference call.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge